IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD E. YOUNG, JR., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 5:20-CV-01152-DAC <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Plaintiff Richard E. Young, Jr. filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On December 18, 2020, the parties consented to the magistrate judge's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Doc. 18), and on May 25, 2021, this matter was reassigned to me pursuant to General Order 2021-06 (non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I **REVERSE** the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Mr. Young filed for SSI on February 27, 2017, alleging a disability onset date of November 1, 2016. (Tr. 15). His claims were denied initially and on reconsideration. (*Id.*). Mr. Young then requested a hearing before an administrative law judge ("ALJ"). (*Id.*). Mr. Young (represented by counsel) and a vocational expert ("VE") testified at a hearing before the ALJ on March 20, 2019.

1

(Tr. 30–55). On April 19, 2019, the ALJ issued a written decision finding Mr. Young was not disabled. (Tr. 15-23). The Appeals Council denied Mr. Young's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). *See* 20 C.F.R. §§ 416.1455, 416.1481. Mr. Young timely filed this action on May 27, 2020. (Doc. 1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

The following summarizes the testimony presented during the March 20, 2019 hearing before the ALJ:

At the beginning of the hearing, the ALJ admitted into evidence Exhibits C-1A through C-29F. (Tr. 33). Mr. Young's counsel had also submitted a letter dated March 7, 2019 indicating he was waiting for certain medical records from AxessPointe from January 1, 2018 through the date of the hearing. (*Id.*). In addition, Exhibit C-29F was deficient because the ALJ could not from the face of the document determine the identity of the clinical counselor who prepared it. (Tr. 46). The ALJ discussed the deficiencies of admitted Exhibit C-29F and directed counsel to correct the deficiencies by obtaining the signature of the clinical counselor, countersigned by a doctor, and including a letter from the treating clinician indicating the clinician's opinion of Mr. Young's abilities. (Tr. 46–48).

The ALJ further indicated to counsel that he intended to conduct a full five-step analysis at the hearing given that the VE was present, but he thought "the step three approach would be the most likely avenue to disability" if the deficiencies in Exhibit C-29F were corrected. (Tr. 46–47). The ALJ then stated that even with the VE's testimony, he was "not sure we'd get from here to there at step five as much as we might be able to get there at step three" if Mr. Young's counsel

2

could "find out who [the] clinical counselor was" or have someone at the office affirm "that those are their opinions." (*Id.*). The ALJ also suggested that counsel obtain a "psych CE" (*i.e.*, psychological consultative examination) either in lieu of, or in addition to, Exhibit C-29F. (*Id.*). The ALJ kept the record open for an additional 30 days after the hearing so that counsel could admit those exhibits into evidence. (Tr. 52–53).

Mr. Young, through his counsel, related his disabilities as mood disorders, paranoia, schizophrenia or schizoaffective disorder, auditory hallucinations, anger issues, heart palpitations, coronary artery disease, paresthesia, and lower extremity weakness. (Tr. 35–36). Although Mr. Young had been homeless and unable to access services—and consequently self-medicated through substance use—he was sober at the time of the hearing, living in supportive housing, and taking his medications as prescribed. (Tr. 35–37).

Mr. Young described his mental health issues by saying that even when he attends his sober living meetings, intrusive voices tell him they are going to hurt him or attack him. (Tr. 38). These incidents cause him chest pain and apparent loss of brain function. (*Id.*).

Mr. Young testified he was unable to work due to his seizures; he was let go from his last job in a machining line after he had two seizures. (Tr. 40). As to his seizure disorder, Mr. Young testified he had at least two grand mal seizures per month, documents these seizures with the assistance of a friend, and sees a neurologist at Summa every six months. (Tr. 39). He is not permitted to drive due to his seizure disorder, and finds it difficult to walk due to chest pains, but he is able to attend appointments by taking public transportation. (Tr. 38–39). He is unable to walk for longer than 15–20 minutes before needing to rest due to dizziness, lightheadedness, and

3

weakness in his lower extremities. (Tr. 45). He stated that his doctor recommended surgery for these conditions. (*Id.*).

At the time of the hearing, Mr. Young had been sober for about six months, since June of 2018. (Tr. 41–42). He testified that his health was "still bad" but that sobriety helped. (Tr. 42). Even so, he was on significant medication because of the intrusive voices that tell him to "hurt people" and "kill [him]self." (Tr. 42–43). He isolates himself so that he does not act out or harm others. (Tr. 42–44). He testified he was hearing voices during the hearing. (Tr. 42).

The VE also testified at the hearing. The ALJ posed a hypothetical to the VE, asking whether there were jobs in the national economy for a hypothetical individual of the same age, education, and vocational background as the claimant. (Tr. 50). That claimant would be at the light exertional range, and could never climb ropes or scaffolds, but could occasionally crawl or climb ramps and stairs. (*Id.*). He should avoid concentrated exposure to environmental conditions, and avoid all exposure to hazards. (*Id.*). He could perform simple, routine, repetitive tasks, but not at a production rate pace. (*Id.*). He should not be responsible for the safety of others, and could only have occasional superficial interactions with coworkers and the general public. (*Id.*). Any changes in the routine work setting would need to be easily explained in advance. (Tr. 50–51).

In response to this hypothetical, the VE testified that three jobs would be available in the national economy: marker, garment sorter, and classifier. (Tr. 51). However, it would be work preclusive if the employee was off task for more than ten percent of the time or absent more than one day per month. (Tr. 51–52). The ALJ indicated he would also consider jobs at the sedentary exertional range, but the existence of those jobs would not be material and did not further question the VE. (Tr. 52).

4

## II.  PERSONAL AND VOCATIONAL EVIDENCE

Mr. Young was born on August 21, 1966 and was 50 years old when his application was filed. (Tr. 22). He is therefore defined as an individual closely approaching advanced age. (*Id.*). *See also* 20 C.F.R. § 416.963. Mr. Young has been employed intermittently, but has not been employed in work that meets the standard of "substantial gainful activity" ("SGA") under the Social Security Act ("Act"). (*Id.*). *See also* 20 C.F.R. § 416.920(a). Therefore, Mr. Young has no past relevant work experience. (*Id.*).

## III.  RELEVANT MEDICAL EVIDENCE

Mr. Young's medical history as it relates to his asserted disability is summarized below.[1]

### A.  Previous History of Disability

Mr. Young previously filed for disability on multiple occasions, including in 2006, 2009, and 2013. (Tr. 87). In a written opinion on October 29, 2015, ALJ Jeffrey Raeber found that Mr. Young's impairments were non-severe, and that there was work in the national economy that he could perform, if he were not limited by his substance use disorder. (Tr. 64–80). Therefore, ALJ Raeber determined Mr. Young was not disabled under § 1614(a)(3)(A) of the Act. (Tr. 80). Because new and material evidence had been presented, ALJ Schmitz did not adopt ALJ Raeber's RFC findings. (Tr. 15).

### B.  Currently Asserted Disability

The ALJ found Mr. Young has the following severe impairments:

---

[1] Mr. Young challenges only the ALJ's determination regarding his mental health impairments. (Pl. Br. 17–22). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Therefore, I summarize only the records and testimony relevant to Mr. Young's mental health.

5

> cervical spondylosis, chronic obstructive pulmonary disease ("COPD"), asthma, tobacco use disorder/nicotine dependence, coronary artery disease ("CAD"), seizure disorder, epilepsy, history of cerebrovascular accident ("CVA") with traumatic brain injury ("TBI"), migraines, schizophrenia/schizoaffective disorder, adjustment disorder, unspecified mood disorder, depressive disorder, bipolar disorder, anxiety disorder, anti-social personality disorder, post traumatic-stress disorder [*sic*] ("PTSD"), alcohol dependence, cannabis dependence, cocaine dependence, and methamphetamine abuse (20 CFR 416.920(c)).

(Tr. 17). In addition, the ALJ found Mr. Young has the following non-severe impairments: history of right hand laceration, left arm numbness and paresthesia, hypertension, hyperlipidemia, external hemorrhoids, and gastro-esophageal reflux disease, causing only minimal limitations on Mr. Young's ability to perform basic work-related activities. (Tr. 18).

Mr. Young has received treatment for his mental health disorders from Portage Path Behavioral Health ("PPBH") off-and-on for several years. (*See* Tr. 285–319, 757–836, 878, 1094–1121, 1124–1207, 1331–1480, 1654–58). When he is unable to access services at PPBH, he has sought the services he needs from the emergency departments at area hospitals, including Summa Health, Cleveland Clinic, and Akron General Hospital. (*See* Tr. 355–755, 881–941, 1232–46, 1481–1529). He has also attended—and at times successfully completed—addiction recovery services at Oriana House, IBH Addiction, and CHC Addition Services. (*See* Tr. 756, 942–44, 1530–1647).

The medical opinion evidence reflects that Mr. Young has a history of schizophrenia, unspecified mood disorders, and antisocial personality disorder. (*See, e.g.* Tr. 318, 369). His treating physicians, including Jeffrey Turell, M.D., note that these disorders appear to be well-controlled when Mr. Young takes his medications. (*Id.*). However, his history of homelessness makes it difficult for him to maintain his medication regimen. (*See, e.g.*, Tr. 309–18). And when he

6

is unable to take his medications, his symptoms become severe, and even induce suicidal ideation. (Tr. 369).

An unidentified "clinical counselor" at PPBH completed a Medical Source Assessment of Mr. Young's mental health. (Tr. 1648–50). This document was later supplemented per the ALJ's directive and signed by Wendy Barnett, PMHNP-BC, counter-signed by Jeffrey L. Moore, M.D, and accompanied with a letter from Mr. Young's counsel. (Tr. 1655–58). According to this assessment, Mr. Young was rated as a 5 (not able to perform designated task or function on a regular, reliable, and sustained schedule) in the following areas: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule; working in coordination or proximity to others; completing a normal workday and workweek without interruption from psychological symptoms; ability to interact appropriately with the general public; accepting instructions and responding appropriately; getting along with coworkers; and traveling in unfamiliar places or on public transportation. (*Id.*). The assessment also indicated that he would be absent more than four days per month, would be off task over 20 percent of the time in an eight hour workday, and would need 30-minute breaks more than four times per day. (*Id.*). According to the document, these findings were based on the clinic's "psychiatric evaluations" of Mr. Young. (Tr. 1656).

### THE ALJ'S DECISION

The ALJ's decision dated February 4, 2019 included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 27, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical spondylosis, chronic obstructive pulmonary disease ("COPD"), asthma, tobacco use disorder/nicotine dependence, coronary artery disease ("CAD"), seizure disorder, epilepsy, history of cerebrovascular accident ("CVA") with traumatic brain injury ("TBI"), migraines, schizophrenia/schizoaffective disorder, adjustment disorder, unspecified mood disorder, depressive disorder, bipolar disorder, anxiety disorder, anti-social personality disorder, post traumatic-stress disorder [*sic*] ("PTSD"), alcohol dependence, cannabis dependence, cocaine dependence, and methamphetamine abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: The claimant can never climb ladders, ropes, or scaffolds. He can only occasionally climb ramps and stairs and crawl. He can frequently handle and finger with the bilateral upper extremities. The claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, loud and very loud noise, fumes odors, dusts, gases, poor ventilation, and other pulmonary irritants. The claimant must avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and operation of motor vehicles. The claimant is limited to simple, routine, and repetitive tasks that are not performed at a production rate pace, such as assembly line work. He can make only simple, work-related decisions and cannot be responsible for the safety or welfare of others. He can interact only occasionally with supervisors, coworkers, and the public. Contact with others must be superficial meaning no sales, arbitration, negotiation, management, direction or persuasion of others. He can respond appropriately to occasional changes in the routine work setting, as long as any such changes are easily explained and/or demonstrated in advance with gradual implementation. (cleaned up).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 21, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

8

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability as defined in the Social Security Act, since February 27, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17–23). With these findings, the ALJ determined Mr. Young was not disabled under § 1614(a)(3)(A) of the Act. (Tr. 23).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long

as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up). A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only those claimants who satisfy each element of the analysis, including inability to do other work, and meet the duration requirements, are determined to be disabled. 20 C.F.R. § 416.920(b)-(f) *see also Walters*, 127 F.3d at 529.

To evaluate the severity of mental impairments in adults, the Commissioner applies a "special technique" at each step of the five-step analysis. 20 C.F.R. § 404.1520a. Under this special technique, the Commissioner first evaluates pertinent symptoms, signs, and laboratory findings to determine whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1520a(b)(1). These are known as the Paragraph A criteria. If the Commissioner finds a

medically determinable impairment, it then rates the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2).

Assessing functional limitations is "a complex and highly individualized process that requires [the Commissioner] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c). The Commissioner uses all relevant medical and nonmedical evidence in the record to evaluate a claimant's functional limitations. *Id.* The Commissioner rates the degree of functional limitation based on the extent to which the claimant's impairment interferes with the "ability to function independently, appropriately, effectively, and on a sustained basis," and therefore considers "such factors as the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.*

The Commissioner uses a five-point scale (none, mild, moderate, marked, and extreme) to rate the claimant's degree of limitation in four broad functional areas: the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Collectively, these are known as the Paragraph B criteria. *Id.* To satisfy the Paragraph B criteria, a claimant's mental disorder must result in either an extreme limitation of one, or marked limitation of two, Paragraph B areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Paragraph C criteria are used to evaluate "serious and persistent" mental disorders. *Id.* The Paragraph C criteria are intended to recognize that mental health treatments may control the more obvious symptoms of the claimant's mental health disorder. *Id.* Paragraph C criteria are satisfied

12

when the evidence shows the claimant relies on ongoing medical treatment, therapy, psychosocial supports, or a highly structured setting to diminish the symptoms of the mental disorder. *Id.* In addition, Paragraph C criteria are satisfied when the evidence shows the claimant is able to obtain only "marginal adjustment" even when the above supports diminish the claimant's mental health disorder symptoms. *Id.* Such "marginal adjustment" means the claimant has minimal capacity to adapt to changes in environment, has deterioration in functioning, and may be unable to function outside of the home or supportive setting. *Id.* Evidence may also show this deterioration has resulted in significant changes in medication, absence from work, or hospitalization. *Id.* Meeting these factors satisfies the Paragraph C criteria.

## DISCUSSION

On appeal, Mr. Young argues: (1) the RFC finding of the ALJ is not supported by the evidence and the rejection of the opinions of Plaintiff's treating physician and therapist is legally insufficient; and (2) the ALJ failed to provide a full and fair hearing and denied Mr. Young's right to due process. (Pl.'s Br. 17, 22). I address these arguments in turn.

**I.  The RFC finding of the ALJ is not supported by the evidence and the rejection of the opinions of Plaintiff's treating physician and therapist is legally insufficient.**

Mr. Young argues the ALJ did not provide a legally sufficient substantive discussion, opinion, or analysis of the treating physician or the therapist's opinion. (Pl.'s Br. 17–18). The Commissioner responds that substantial evidence supported the ALJ's findings and that the ALJ appropriately rejected the claims from Dr. Moore and the clinical counselor, and properly weighed the evidence presented. (Def.'s Br. 11–16). I agree with Mr. Young.

Mr. Young's case turns on the Step Three analysis. The objective medical evidence must be sufficient to show whether his impairments meet or equal one of the listings in the Listing of

Impairments. "At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, 414 (6th Cir. 2011). "Each listing specifies the 'objective medical and other findings needed to satisfy the criteria of that listing.'" *Id.* (citing C.F.R. § 404.1525(a)). The ALJ "must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Houston v. Colvin*, No. 15-cv-11939, 2017 WL 82976, at *2 (E.D. Mich. Jan. 10, 2017) (internal quotations omitted).

Here, the ALJ indicated that Mr. Young's impairments would likely lead to a finding of disability at Step Three, particularly if Exhibit C-29F were signed by a clinician and countersigned by a physician attesting to their medical opinion of Mr. Young's impairments. The ALJ left the record open for an additional 30 days after the hearing in part to receive this updated exhibit. But, after timely receiving the double-countersigned exhibit documenting that Mr. Young's treating mental health nurse practitioner and physician concur in the clinical counselor's determinations that Mr. Young had extreme limitations in a number of categories, the ALJ found him not disabled.

In reaching this conclusion, the ALJ failed to provide a reasoned explanation of his findings and thereby deprived this Court of meaningful review. At Step Three, the ALJ provides a perfunctory analysis of the Paragraph B criteria, some of which contradicts his statements at the hearing and his analysis in later steps. For example, the ALJ's opinion states "[n]o treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (Tr. 18). But in recounting the medical findings of Mr. Young's psychiatrist

14

and therapist at PPBH, in reference to Exhibits C-29F (unsigned copy) and C-31F (signed copy of the same), the ALJ describes their findings of extreme functional impairments, such that Mr. Young would be off-task up to 20 percent of the workday and miss more than 4 days of work each month. (Tr. 21–22). In that section, the ALJ concluded "[d]espite their status as treating sources, I cannot give controlling weight, or even great weight, to these opinions because they are inconsistent with the objective medical evidence." (Tr. 22). The Step Three, Paragraph C analysis is even more lacking. In two sentences, the ALJ dismisses Mr. Young's claim: "I have also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 18).

Between the perfunctory review of the Step Three, Paragraph B factors, the lack of explanation of the Paragraph C factors, and the disconnection from the evidence referenced at Step Four, the ALJ's analysis does not provide the "logical bridge" necessary for this Court to conduct "meaningful review." The ALJ's failure to follow applicable procedures has deprived Mr. Young of substantial rights, requiring that the ALJ's determination be reversed.

II.  **The ALJ failed to provide a full and fair hearing and denied Mr. Young's right to due process.**

Mr. Young argues the ALJ abused his discretion and failed to provide a full and fair hearing in violation of HALLEX I-3-3-2, and thereby denied him his right to due process. (Pl.'s Br. 22–25). The Commissioner contends the ALJ fully developed the record and provided Mr. Young with a full and fair hearing, and that it was Mr. Young's burden to produce sufficient evidence to support his claim of disability. (Def.'s Br. 17). The Commissioner is correct as to both points.

The ALJ bears the burden to fully develop the record, and the failure to do so may deny the claimant a full and fair hearing. *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1052

(6th Cir. 1983). And this basic obligation to fully develop the record rises to a "special duty" when the claimant appears *pro se*. *Id.* at 1051 (internal quotations omitted). There is no bright-line test to determine if an ALJ has met the duty to develop the record fully; this must be determined on a case-by-case basis. *Id.* at 1052.

Even though the ALJ has the burden to develop the record fully, the claimant has the evidentiary burden in the first four steps, and the Commissioner has the burden in the fifth step of the analysis. *White v. Comm'r of Soc. Sec. Admin.*, 970 F. Supp. 2d 733, 739 (N.D. Ohio 2013). The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of an eligible disability. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Here, I find that the ALJ properly met his burden to fully develop the record. Mr. Young was represented by counsel at the hearing, and so no "special duty" was imposed beyond the usual obligation. The ALJ left the record open for thirty days after the hearing and allowed all available and pending records to be admitted into evidence. And Mr. Young also met his burden of production by providing the requested records from AxessPointe, and by obtaining the signatures on the exhibit as required by the ALJ. The ALJ committed no error and Mr. Young received a full and fair hearing.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I find the ALJ's decision denying SSI not supported by substantial evidence, but that Mr. Young was afforded a full and fair hearing. I therefore reverse the ALJ's decision and remand the matter to the Commissioner for further proceedings.

Dated: July 28, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE